UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OVERSEAS PRIVATE INVESTMENT
CORPORATION,

                  Plaintiff,

       - against –

DAVID LEWIS MOYER and ANTONIO RAUL
MARTINEZ,

                Defendants.

15-CV-08171 (KBF)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF OVERSEAS PRIVATE INVESTMENT COPORATION'S MOTION FOR SUMMARY JUDGMENT

ZUKERMAN GORE BRANDEIS
  & CROSSMAN, LLP
Ted Portez
Florence M. Beauboeuf
Eleven Times Square
New York, New York 10036
Telephone: (212) 223-6700
*Attorneys for Plaintiff Overseas*
*Private Investment Corp.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

    I.      OPIC ................................................................................................... 2

    II.     The Loan ............................................................................................ 3

    III.    The Guaranties ................................................................................... 3

    IV.   The Borrower and the Guarantors Default .......................................... 6

ARGUMENT .......................................................................................................... 7

OPIC IS ENTITLED TO SUMMARY JUDGMENT AGAINST THE
GUARANTORS BECAUSE THE BORROWER DEFAULTED ON LOAN
PAYMENTS AND THE GUARANTORS HAVE FAILED TO REPAY THE
DEBT THEY UNCONDITIONALLY GUARANTEED ............................................ 7

    I.      Standard of Review ............................................................................ 7

    II.     OPIC Has Established a *Prima Facie* Case of Default on the
           Guaranties. ......................................................................................... 8

    III.    All Defendants' Affirmative Defenses Have Been Waived. ................. 8

    IV.   Even if Not Otherwise Barred, the Pleaded Defenses Have No Merit
           At All ............................................................................................... 10

CONCLUSION ..................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Anglo Irish Bank Corp. Ltd. v. Ashkenazy,*
    107 A.D.3d 602 (1st Dep't 2013) ..................................................17

*Banco Do Estado De Sao Paulo, S.A. v. Mendes Junior Intern. Co.,*
    249 A.D.2d 137 (1st Dep't 1998) ..................................................14

*Banner Indus. Inc. v. KevB.H. Assoc. L.P.,*
    170 A.D.2d 246 (1st Dep't 1991) ....................................................8

*Bell Atl. Tricon Leasing Corp. v. Pac. Contracting Corp.,*
    703 F.Supp. 302 (S.D.N.Y.1989) ..................................................14

*Brookman & Brookman, P.C. v. Schiavoni,*
    245 A.D.2d 93 (1st Dep't 1997) ......................................................7

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322 (1986) ................................................................7

*Century Bus. Credit Corp. v. Gargiulo Foods. L.L.C.,*
    No. 03 Civ. 4394 (RO), 2003 WL 21998959 (S.D.N.Y. Aug. 22, 2003) ..................................7

*Chemical Bank v. Haseotes,*
    13 F.3d 569 (2d Cir. 1994) ........................................................8, 16

*Citicorp Leasing Inc. v. United Am. Funding, Inc.,*
    No. 03–CV–1586 (WHP), 2005 WL 1847300 (S.D.N.Y. Aug. 5, 2005) ..............................10

*Columbus Trust Co. v. Campolo,*
    110 A.D.2d 616 (2d Dep't 1985), aff'd 66 N.Y.2d 701 (1985) ..................................12

*Compagnie Financiere de CIC et de L'Union Européenne v. Merrill Lynch,*
    188 F.3d 31 (2d Cir. 1999) ..............................................................9

*Compania Sud Americana De Vapores S.A. v. Global*
*Terminal & Container Servs.,*
    No. 12–1141–cv., 509 Fed. Appx. 97(2d Cir. Jan. 30, 2013) ..................................12

*Corey v. Collins,*
    10 A.D.3d 341 (1st Dep't 2004) ..................................................16

*Delaney v. Bank of Am. Corp.,*
    766 F.3d 163 (2d Cir. 2014) ............................................................7

*DiScipio v. Sullivan,*
    30 A.D.3d 660 (3d Dep't 2006) ..................................................17

*EMI Music Mktg. v. Avatar Records. Inc.,*
    317 F. Supp. 2d 412 (S.D.N.Y. 2004) ..........................................10

*Erdheim v. Gelfman,*
    303 A.D.2d 714 (2d Dep't 2003) ..................................................13

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.,*
   No. 96 Civ. 5250 MBM, 1997 WL 189128 (S.D.N.Y. April 18, 1997)..................11

*First New York Bank for Bus. v. DeMarco,*
   130 B.R. 650 (Bankr.S.D.N.Y.1991)...............................................10

*Gillberg v. Shea,*
   No 95 Civ. 4247 (KMW), 1996 WL 406682 (S.D.N.Y. May 31, 1996)..................7

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.,*
   18 N.Y.3d 765, N.E.2d 1187 (2012) ............................................13

*Harrison Court Assocs. v. 220 Westchester Ave. Assocs.,*
   203 A.D.2d 244 (2d Dep't 1994)................................................16

*Health-Chem. Corp. v. Baker,*
   737 F.Supp. 770 (S.D.N.Y. Feb. 26, 1990......................................17

*Highland Capital Mgmt., L.P. v. Schneider,*
   No. 02 Civ. 8098 (PKL), 2008 WL 282769 (S.D.N.Y. Jan. 31, 2008) ..............11

*Hotel 71 Mezz Lender LLC v. Mitchell,*
   63 A.D.3d 447 (1st Dep't 2009)...............................................15

*HSH Nordbank AG New York Branch v. Street,*
   421 F. App'x 70 (2d Cir. 2011).................................................9

*Indus. Bank of Japan Trust Co. v. Haseotes,*
   No. 92 Civ. 6074 (SWK), 1993 WL 322775 (S.D.N.Y. Aug. 19, 1993) ..............8

*K I C Chems., Inc. v. ADCO Chem. Co.,*
   No. 95 Civ. 6321 (MBM), 1996 WL 122420 (S.D.N.Y. March 20, 1996)..............11

*North Fork Bank Corp. v. Graphic Forms Assoc, Inc.,*
   36 A.D.3d 676 (2d Dep't 2007).................................................8

*Phoenix Acquisition Corp. v. Campcore,*
   81 N.Y.2d 138, 612 N.E.2d 1219 (1993) ........................................8

*Red Tulip, LLC v. Neiva,*
   44 A.D.3d 204 (1st Dep't 2007)...............................................14

*The Bank of New York v. Tri Polyta Fin. B.V.,*
   No. 01 Civ. 9104 (LTS)(DFE), 2003 WL 1960587 (S.D.N.Y. Apr. 25, 2003).........9

*United States v. Culver,*
   958 F.2d 39 (4th Cir.1991)...............................................2, 11, 13

*Ursa Minor Ltd. v. AON Fin. Prod., Inc.,*
   No. 00 Civ. 2474 (AGS), 2000 WL 1010278 (S.D.N.Y. July 21, 2000) ..........7, 10

**Statutes**

28 U.S.C. § 1345 ...........................................................................................................11

28 U.S.C. § 2415(a) ......................................................................................................13

28 U.S.C. §1345 .......................................................................................................2, 10

**Rules**

CPLR §213(2)..........................................................................................................12, 13

Fed. R. Civ. P. 56 (e) .....................................................................................................7

Fed. R. Civ. P. 56(a) ......................................................................................................7

Fed. R. Civ. P.56...........................................................................................................1

New York C.P.L.R. 206(a) ...........................................................................................13

Plaintiff Overseas Private Investment Corporation ("OPIC") respectfully submits this Memorandum of Law in support of its motion, made pursuant to Fed. R. Civ. P.56 seeking summary judgment against Defendants David Lewis Moyer ("Moyer") and Antonio Raul Martinez ("Martinez", collectively "Guarantors") and dismissing the entirely baseless (and mainly frivolous) affirmative defenses interposed in their Answer.  For the reasons set forth below, and in the accompanying Declaration of Mary Ryan Bequai and the exhibits attached thereto, OPIC's motion should be granted in its entirety.

## PRELIMINARY STATEMENT

This action could not be more straightforward. Moyer and Martinez each unconditionally guaranteed re-payment of a loan OPIC made to C21 Brasil Disenvolvimento Ltda. (the "Borrower"), a Brazilian entity of whose equity Moyer and Martinez collectively owned 95%. The Borrower failed to repay the loan amount when due, violated the separate obligation to provide certain ongoing information to OPIC, each of which is an "Event of Default" under the Loan Agreement.  Accordingly, by written Notice of Default and Notice of Acceleration, OPIC declared the loan in default and accelerated it, as the Loan Documents expressly authorized, and then made demand upon Moyer and Martinez as unconditional Guarantors, which they have principally ignored.

OPIC therefore commenced this action seeking judgment against the Guarantors, jointly and severally, on each of their Guarantees, for the principal amount due and owing to OPIC, plus accrued interest and agreed fees and costs.

In their Answer, while admitting that they executed unconditional Guaranties, the Guarantors plead a kitchen sink list of twenty-five separate affirmative defenses, many or most of which cannot with a straight face be defended, and all of which were expressly waived in the Guaranties or otherwise do not apply.  By way of illustration, it requires no analysis to disprove the Fourth Affirmative Defense, which asserts that OPIC, an undisputed lender, "lacks standing

1

to bring the present claims," the Tenth Affirmative Defense, which claims that the Guaranties were "contracts of adhesion," the Eleventh Affirmative Defense, which proposes that OPIC "cannot demonstrate injury, impact or damage as a result of any actions or omissions by [the Guarantors]," and virtually every other defense pleaded, each of which are individually discussed below.

Accordingly, because there are no genuine issues of material fact, and no non-frivolous or un-waived affirmative defenses at issue here, OPIC respectfully submits that it is entitled to summary judgment in the unpaid balance of OPIC's loan to Borrower, plus accrued interest, fees and OPIC's attorneys' fees, all as set forth in more detail in the attached Declaration of Mary Ryan Bequai (the "Bequai Decl."), the Managing Director of OPIC's Portfolio Management Division.

## STATEMENT OF FACTS

The relevant facts are pleaded in the accompanying Bequai Declaration and the exhibits attached thereto.  They are repeated briefly here only to the extent necessary to discuss the substantive grounds of OPIC's motion for summary judgment.

### I.     OPIC

OPIC is an agency of the United State government, established in 1961 by act of Congress. Bequai Decl. ¶ 3.  Its authorizing statute, the relevant provisions of which are attached as Exhibit A to the Bequai Decl., authorizes it to sue and be sued in its own name.  28 U.S.C. §1345 grants the District Courts jurisdiction over all actions commenced by the United States or an agency thereof that is authorized, as OPIC is, to sue and be sued in its own name. The loan documents contain the Guarantors' consent to the jurisdiction of this Court, to venue in this judicial district, and to the application of New York substantive law.

OPIC is the federal government's development finance agency.  Bequai Decl. ¶ 2. As part of its mission, OPIC offers loan financing, among other things, to United States-related investors for specified approved projects in the developing world.  This action concerns one such

loan: on December 11, 2009, OPIC entered into an agreement by which it agreed to loan the Borrower an amount sum not to exceed $3,000,000.00, of which it eventually loaned the principal sum of $1,200,000 in two separate tranches (the "Loan").

## II.     The Loan

The Loan was documented by a Loan Agreement and related documents (collectively, the "Loan Documents"). Bequai Decl. Exhs. B-D; Compl. ¶ 6 [Dkt.1]; Answer ¶ 6 [Dkt.12].   The Loan was intended to fund the development and establishment of a Century 21 real estate brand franchise in Brazil. Bequai Decl. ¶ 5; Compl. ¶ 6; Answer ¶ 6.  Moyer and Martinez admit they collectively own ninety-five percent (95%) of the equity of the Borrower. Bequai Decl. ¶ 5; Compl. ¶ 7; Answer ¶ 7.

Pursuant to the terms of the Loan Documents, Borrower were entitled to no less than two and no more than eight disbursements, each disbursement to be in an amount not less than $200,000 and no more than $1,500,000, each separate disbursement to be evidenced by a promissory note in agreed form, and with payment terms set forth under the Loan. Bequai Decl. Exh. B; Compl. ¶ 8; Answer ¶ 8.

In addition to granting OPIC a mortgage interest on real estate they owned in Honolulu, Hawaii as additional collateral for the Loan, each of Moyer and Martinez executed a broad, unconditional Guaranty of all of Borrower's obligations. Bequai Decl.¶ 14; Compl. ¶ 9; Answer ¶ 9 (each a "Guaranty" and collectively, the "Guaranties.").

## III.    The Guaranties

Section 4.02(a)(ii)(C) of the Loan Agreement provides that as a condition precedent to OPIC's obligation to make the first disbursement under the Loan Agreement, Borrower was obligated to provide "joint and several personal guaranties executed by Antonio Raul Martinez and David Lewis Moyer in favor of OPIC guaranteeing the payment of the Loan…" Bequai Decl. ¶ 6, Exhs. B at § 4.02(a)(ii)(C).  In compliance with this requirement, each of Moyer and Martinez admit they executed identical Guaranties in favor of OPIC dated as of December 23,

3

2009. Bequai Decl. Exhs. C and D.  (Moyer and Martinez will henceforth be referred to jointly as the "Guarantors" and each individually as a "Guarantor").

Under Section 1 of the Guaranties, each of the Guarantors unconditionally guaranteed all of the obligations of the Borrower:

> The Guarantor hereby unconditionally and irrevocably guarantees, as primary obligor and not merely as a surety, the full and punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all the obligations of the Borrower now or hereafter existing under the Loan Documents, including, without limitation (the "Obligations") the following: (i) all principal and accrued interest due and payable under the Loan Documents; (ii) all fees, costs, expenses and similar amounts payable under the Loan Documents; and (iii) the due performance and compliance by the Borrower with the terms and conditions of the Loan Documents.

*See* Guaranties, Bequai Decl. Exhs. C and D at §1 (emphasis added).

Under Section 2(a) of the Guaranties, the Guarantors agreed that their Obligations were absolute and unconditional, and agreed to waive any and all defenses to the enforcement or the validity of their Guaranties:

> The obligations of the Guarantor under this Guaranty are independent of the Obligations, and a separate action or action may be brought and prosecuted against such Guarantor to enforce this Guaranty, irrespective of whether any action is brought against the Borrower or whether the Borrower is joined in any such action or actions. All rights of OPIC and the obligations of the Guarantor under this Guaranty **shall be absolute, unconditional, irrevocable and continuing and shall not to any extent or in any way be reduced, limited, terminated, discharged, impaired, or otherwise affected** (except as the same may be extinguished by the indefeasible payment and/or performance in full of the Obligations) **irrespective of** …:
>
> (ii)   **any right claim, defense, waiver,** surrender or compromise that such Guarantor may have or have made under or with respect to the Guaranty or otherwise; …
>
> (iv)   **any taking, exchange, release or non-perfection of any collateral**, or any taking, release, or amendment or waiver of, or consent to departure from, any other guaranty for all or any of the Obligations;
>
> (v)    **any manner of application of collateral, or proceeds thereof, to all or any of the Obligations,** or any manner of voluntary or involuntary liquidation, sale or other disposition of collateral for all of any of the Obligations or any other assets of the Borrower or any other Person, or the receivership, insolvency, bankruptcy, reorganization, or similar

> proceedings affecting the Borrower or its assets, or the release or
> discharge of the Borrower from any of the Obligations; …
>
> (vii)   **any change of circumstances, whether or not foreseeable** and whether
> or not any such change does or might vary the Obligations or the risk or
> obligations of the Guarantor hereunder;…
>
> (xiv)   **any other circumstance that might otherwise constitute a defense
> available** to, or a discharge of, the Borrower, the Guarantor, or any other
> guarantor or surety.

*Id.* at § 2 (emphasis added).

Under Section 2(b) of the Guaranties, each Guarantor agreed that:

> This Guaranty is a guaranty of payment and performance and not of collection. OPIC
> may require payment by the Guarantor and enforce the obligations of the Guarantor
> hereunder without first being required to: (i) make any demand of, or make any effort of
> collection of any obligation of, or enforce OPIC's claims against, the Borrower, the
> Guarantor, or any other Person; (ii) resort to any security or other guaranty of the Loan or
> this Guaranty; or (iii) take any other action.

*Id.* at § 2(b).

In addition to the defenses the Guarantors waived under Section 2, under Section 3 of the

Guaranties, they also waived the following additional defenses:

> diligence, filing of claims with a court in the event of a bankruptcy or insolvency of the
> Borrower or otherwise, and any right to require a proceeding first against the Guarantor
> or the Borrower; (b) notice (including notice of a Default or Event of Default), protest,
> notice or acceptance of this Guaranty, notice of collateral received or delivered, or notice
> of any other action taken in reliance hereon; (c) all demands and notices in connection
> with the delivery, acceptance, performance, default, or enforcement of any of the
> Obligations, all notices of the existence, creation or incurring of any Indebtedness under
> the Loan Documents by the Borrower, and all other demands and notices of any
> description; and (d) **any requirement that OPIC protect, secure, perfect or insure any
> Lien or any property subject thereto or exhaust any right to take any action against
> the Borrower or any other Person or any collateral**. *Id.* at § 3 (emphasis added).

Each of the Guarantors agreed that they had entered the Guaranty "as a product of arms-

length negotiations between the Guarantors and OPIC" and that the Guarantor had "entered into

the Guaranty freely, voluntarily and with the advice of counsel." *Id.* at § 8(m).

The Guaranties are governed by New York law and provide for jurisdiction and venue in

the Southern District of New York. *Id.* at § 8(i)(j).

### IV.     The Borrower and the Guarantors Default

In 2013, Borrower defaulted under the Loan Agreement by failing to make loan repayments when due and separately by failing to comply with the information reporting requirements. Bequai Decl. ¶ 11.

As a result, and in accordance with Section 9.02 of the Loan Agreement, by letter dated February 13, 2013, OPIC served upon Borrower a Notice of Default and Notice of Acceleration ("the Default Notice"), which set forth that Borrower was in default and as a result, all outstanding obligations of Borrower were immediately due and owing. *Id.*, Bequai Decl. at Exh. B. The Default Notice directed Borrower to repay the accelerated principal sum of $1,056,200 plus then-accrued interest of $61,932.26, for a total immediately due and owing of $1,118,132.26 (the "Accelerated Debt"). Bequai Decl., Exh. B.

When Borrower failed to pay the Accelerated Debt, or any part thereof, OPIC levied upon an escrow account Borrower posted as additional collateral; OPIC later served each of the Guarantors with a Demand for Payment Under Guaranty (the "Demand on Guarantors"), Bequai Decl. ¶ 13, Exhs. F and G, in each case demanding that the Guarantors pay OPIC the sum of $1,003,234.35 then due and owing. Guarantors ignored the Demand on Guarantors. Bequai Decl. ¶ 14.

On or about September 3, 2015, Guarantors sold one of the Hawaiian collateral properties, and OPIC realized the sum of $81,430.00 representing the excess proceeds of such sale after payment of prior secured debt and customary closing expenses. Bequai Decl. ¶ 14. As a result, as of September 30, 2015, the obligations of the Guarantors to OPIC, stood at one million one hundred and sixty-one thousand eight hundred fifty-six thousand dollars and three cents ($1,161,856.03). *Id.*

This action followed. For the reasons set forth below and in the accompanying Bequai Decl., OPIC respectfully submits that it is entitled to summary judgment against each of the Guarantors, jointly and severally, in the full amount of their obligations under their Guaranties.

## ARGUMENT

### OPIC IS ENTITLED TO SUMMARY JUDGMENT AGAINST THE GUARANTORS BECAUSE THE BORROWER DEFAULTED ON LOAN PAYMENTS AND THE GUARANTORS HAVE FAILED TO REPAY THE DEBT THEY UNCONDITIONALLY GUARANTEED

OPIC is entitled to judgment as a matter of law against Moyer and Martinez on their unconditional Guaranties. None of the defenses they interposed precludes summary judgment; in fact, each of the twenty-five separate affirmative defenses is expressly precluded by the terms of the Guaranties themselves, or as a matter of clear-cut law.

### I.      Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) ; Fed. R. Civ. P. 56(a). Where a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Celotex*, 477 U.S. at 249-50 (citations omitted).

Actions to enforce promissory notes and guarantees are routinely resolved on motions for summary judgment. *See, e.g., Century Bus. Credit Corp. v. Gargiulo Foods. L.L.C.*, No. 03 Civ. 4394 (RO), 2003 WL 21998959, at *1 (S.D.N.Y. Aug. 22, 2003) (granting summary judgment against guarantor based on unconditional guarantee); *Ursa Minor Ltd. v. AON Fin. Prod., Inc.*, No. 00 Civ. 2474 (AGS), 2000 WL 1010278, at *5 (S.D.N.Y. July 21, 2000) (granting summary judgment as a matter of law based on defendant's unconditional guarantees); *Brookman & Brookman, P.C. v. Schiavoni*, 245 A.D.2d 93 (1st Dep't 1997) (affirming order granting partial summary judgment for liability under guarantee); *Gillberg v. Shea*, No 95 Civ. 4247 (KMW), 1996 WL 406682, at *2 (S.D.N.Y. May 31, 1996) (granting summary judgment on claim for

non-payment of promissory note); *Indus. Bank of Japan Trust Co. v. Haseotes*, No. 92 Civ. 6074 (SWK), 1993 WL 322775, at *2 (S.D.N.Y. Aug. 19, 1993) (granting summary judgment to enforce a guarantee); *North Fork Bank Corp. v. Graphic Forms Assoc, Inc.*, 36 A.D.3d 676, 677 (2d Dep't 2007) (affirming order granting summary judgment for claim enforcing personal guarantee); *Banner Indus. Inc. v. KevB.H. Assoc. L.P.*, 170 A.D.2d 246, 246 (1st Dep't 1991) (affirming grant of summary judgment in suit on note and guarantee).

## II.     OPIC Has Established a *Prima Facie* Case of Default on the Guaranties.

OPIC has established an undisputed *prima facie* case of default by the Guarantors on the Guaranties. A *prima facie* case of breach of a guaranty under New York law requires proof that (1) plaintiff is owed a debt from a third party; (2) defendant guaranteed payment of the third party's debt; and (3) the debt has not been paid by the third party or the defendant. *See Chemical Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994) (applying New York law). Thus, the guarantor becomes liable on a note upon default by the borrower. *Phoenix Acquisition Corp. v. Campcore*, 81 N.Y.2d 138, 143, 612 N.E.2d 1219 (1993).

The Guarantors do not genuinely dispute that OPIC made a loan to Borrower, that Borrower defaulted on the terms, that the loan was accelerated, that Borrower did not pay the Accelerated Debt, that Guarantors each signed an unconditional Guaranty and that, except for the two payments referenced above, they have not paid OPIC the amounts they owe under their Guaranties. This is all that OPIC must establish in order to win summary judgment.

In the face of this clear and undisputed proof, the Guarantors have pleaded twenty-five separate affirmative defenses, each one more baseless than the next. We set forth below that the Guarantors have, in fact, waived all of these defenses, and such waivers are routinely enforced by the Courts. But even if not waived, none of these affirmative defenses passes the straight face test and thus independently must be dismissed.

## III.    All Defendants' Affirmative Defenses Have Been Waived.

"Once a plaintiff has established a *prima facie* case of entitlement to recover under a guaranty, the defendant bears the burden of producing 'evidentiary facts showing the existing of

a triable issue of fact with respect to a *bona fide* defense.'" *Industrial Bank of Japan.*, 1993 WL 322775, at *4 (rejecting equitable affirmative defenses for lack of legal or factual justification); *see also, Banner Indus.*, 170 A.D.2d at 246 (affirming grant of summary judgment in suit on note and guarantee and rejecting affirmative defenses proffered by defendants); *HSH Nordbank AG New York Branch v. Street*, 421 F. App'x 70, 72-73 (2d Cir. 2011) (affirming summary judgment enforcing guarantee where defendants failed to overcome their burden). The Guarantors cannot meet this burden.

Moyer and Martinez cannot avoid their unconditional obligation to pay by raising affirmative defenses aimed at challenging the enforceability of the Guaranties.  They are precluded as a matter of law from bringing such affirmative defense because the Guaranties are unconditional and absolute. Each of the Guaranties contain express and unambiguous waivers of all defenses and claims: "[a]ll rights of OPIC and the obligations of the Guarantor under this Guaranty **shall be absolute, unconditional, irrevocable and continuing** and shall not to any extent or in any way be reduced, limited, terminated, discharged, impaired, or otherwise affected... **irrespective of** ... (ii) **any right, claim, defense waiver, surrender or compromise that such Guarantor may have or have made** under or with respect to the Guaranty or otherwise; or ... (xiv) **any other circumstance that might otherwise constitute a defense available to, or a discharge of, the Borrower, the Guarantor**, or any other guarantor or surety." Guaranties, Exhs. C and D of Becquai Decl. at § 2(a) (emphasis added).

"Under New York law ... unconditional guarantees with clear and unambiguous terms are enforceable and bar the assertion of affirmative defenses." *The Bank of New York v. Tri Polyta Fin. B.V.*, No. 01 Civ. 9104 (LTS)(DFE), 2003 WL 1960587, *4 (S.D.N.Y. Apr. 25, 2003); *see also, Compagnie Financiere de CIC et de L'Union Européenne v. Merrill Lynch*, 188 F.3d 31, 35-37 (2d Cir. 1999) (unconditional guarantees preclude a "broad range of defenses under New York law") (collecting cases); *HSH Nordbank*, 421 F. App'x at 73, 75 (holding that "a guaranty which defined the guarantor's obligations as 'unconditional and irrevocable, irrespective of . . . any other circumstances which might otherwise constitute a legal or equitable discharge or

defense' had the effect of waiving 'all legal or equitable' defenses") (emphasis added); *EMI Music Mktg. v. Avatar Records. Inc.*, 317 F. Supp. 2d 412, 419 (S.D.N.Y. 2004) (holding that unconditional guaranty, even if devoid of specific waiver language, is binding and waives all defenses by guarantor to debt enforcement); *Ursa Minor Ltd.*, 2000 WL 1010278, at \*8 (unconditional guarantees with clear and unambiguous terms bar the assertion of affirmative defenses); *In re Boco Enters.*, 204 B.R. 407, 414 (Bankr.S.D.N.Y. 1997) (where guarantors' liability was "'absolute and unconditional' irrespective of... any defenses available... in respect of the Guaranty," guarantors precluded from asserting affirmative defenses); *First New York Bank for Bus. v. DeMarco*, 130 B.R. 650, 654 (Bankr.S.D.N.Y.1991) (unconditional guaranties "have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims.").

The rule that unconditional guaranties are enforceable if written in clear and unambiguous terms "reflects the notion that when parties have expressly allocated risks, the judiciary shall not intrude into their contractual relationship." *Citicorp Leasing Inc. v. United Am. Funding, Inc.*, No. 03–CV–1586 (WHP), 2005 WL 1847300, at \*4 (S.D.N.Y. Aug. 5, 2005) (noting that where a guarantee is unconditional "certain defenses are automatically precluded and thus non-meritorious"). Thus, a guarantor "cannot rely on defenses that were waived by a guarantee to defeat summary judgment, even if the defendant establishes an issue of fact." *Id.* at \*5. Ultimately, such fact issues cannot be "material" as a matter of law.

**IV.    Even if Not Otherwise Barred, the Pleaded Defenses Have No Merit At All**

For many of the affirmative defenses that have been pleaded, merely to state them is to recognize their futility, but in the interest of comprehensiveness. The Complaint clearly pleads a breach of the Guaranties, and the Guarantors do not say otherwise, requiring the dismissal of the First Affirmative Defense of failure to state a claim.  A discussion of each of the twenty-four remaining affirmative defenses follows.

**a.    Second Affirmative Defense: Subject Matter Jurisdiction**:  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 which provides that "[e]xcept as

otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.  The relevant portions of OPIC's authorizing statute, attached to the Bequai Dec. as Exhibit A, make clear that OPIC is an agency of the United States government authorized to sue in its own name.

      **b.**     **Third Affirmative Defense:** *In Personam* **Jurisdiction:** Guarantors expressly consented to the jurisdiction of this Court in their Guaranties:

> The Guarantor agrees that any legal action or proceeding against the Guarantor with respect to the Guaranty may be brought in the court of the State of New York or the United States of America for the Southern District of New York

Bequai Decl., Exhs. C and D at § 8(j).

     Courts in New York routinely enforce a party's consent to jurisdiction and this consent amounts to a waiver of a party's right to object to personal jurisdiction. *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, No. 96 Civ. 5250 MBM, 1997 WL 189128, at *1 (S.D.N.Y. April 18, 1997); *K I C Chems., Inc. v. ADCO Chem. Co.*, No. 95 Civ. 6321 (MBM), 1996 WL 122420, at *4 (S.D.N.Y. March 20, 1996) (consent to a forum selection clause waives a party's right to object to personal jurisdiction).

      **c.**     **Fourth Affirmative Defense: Lack of Standing:** "It is 'axiomatic' that a party to an agreement has standing to sue a counter-party who breaches that agreement…." *Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098 (PKL), 2008 WL 282769, at *19 (S.D.N.Y. Jan. 31, 2008) (party to contract has standing to sue even though third-party beneficiary also has standing to sue).  OPIC brings this action for the Guarantors' breach of the Guaranties they executed in OPIC's favor and as part of the loan transaction. There is no question that OPIC has standing to sue for a breach of the Guaranties.

      **d.**     **Fifth Affirmative Defense: Waiver:**  The Guarantors do not hint at what it is they believe OPIC has waived, but no matter: Section 2(a) of the Guaranties each expressly provide that Moyer and Martinez cannot claim a waiver:  "all rights of OPIC and the obligations

of the Guarantor under this Guaranty shall be absolute, unconditional, irrevocable and continuing and shall not to any extent or in any way be reduced, limited, terminated discharged, impaired or otherwise affected…irrespective of…(ii) any right, claim, defense, **waiver,** surrender or compromise that such Guarantor may have or have made…" Bequai Decl., Exhs. C and D at § 2(a) (emphasis added).

      **e.**    **Sixth Affirmative Defense: Laches:** OPIC brought this action well within any applicable statute of limitations. The Guarantors did not first become liable to OPIC until they refused to honor their Guaranties in response to OPIC's demands, which were made as to Moyer by letter dated May 15, 2013 and to Martinez by letter dated July 22, 2013. OPIC commenced this action in September 2015, well within the six-year statute of limitations for breach of contract actions contained in CPLR 213(2).[1]

    The defense of laches is inapplicable as a matter of law where, as here, an action was commenced prior to the expiration of the statute of limitations. *In re Caldor Inc..*, 217 B.R. 121, 135 (Bankr.S.D.N.Y.1998) (Caldor's claims for breach of contract and unjust enrichment are not barred by the doctrine of laches since Caldor commenced this proceeding within the statutory period); *Compania Sud Americana De Vapores S.A. v. Global Terminal & Container Servs.*, No. 12–1141–cv., 509 Fed. Appx. 97, 100 (2d Cir. Jan. 30, 2013) (barring laches defense because "t[]he filing was well within the applicable six-year statute of limitations."); *Columbus Trust Co. v. Campolo*, 110 A.D.2d 616, 618 (2d Dep't 1985), *aff'd* 66 N.Y.2d 701 (1985) ("the sixth affirmative defense, alleging that plaintiff is guilty of laches and unreasonable delay, is without merit since the defense of laches does not operate to bar actions at law commenced within the period fixed by the applicable Statute of Limitations.")

---

[1] It is outside the pleadings, but the Court should know that the Guarantors repeatedly and fervently asked OPIC to delay bringing this action; they repeatedly represented that they had commenced an arbitration in Brazil against the Borrower's franchisors for improperly terminating their franchise, and they expected a sizable recovery in the arbitration that would allow for the resolution of this dispute. Whether the arbitration has concluded or is still pending in Brazil in unknown, but OPIC is disturbed that Moyer and Martinez have chosen to use the very delay in prosecuting for which they asked as the basis for even a frivolous laches defense.

      f.      **Seventh Affirmative Defense: Statute of Limitations:**  As above, the statute of limitations in New York, whose law applies pursuant to the Guaranties ("THIS GUARANTY SHALL BE CONSTRUED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK." Bequai Decl., Exhs. C and D at § 8(i)(j) (emphasis and caps in original)) is six years.  OPIC commenced this action in well less than three years from the date of the Guarantors' breach of their Guaranties.

      Under CPLR § 213(2), claims arising out of an alleged breach of contract must be brought within six years from the alleged breach; *see also, Erdheim v. Gelfman*, 303 A.D.2d 714, 714 (2d Dep't 2003) (statute of limitations for breach of contract and account stated claim is six years).

      In a breach of contract action, "a claim generally accrues at the time of the breach." *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770, N.E.2d 1187 (2012). Specifically, "where the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the party making the claim possesses a legal right to demand payment." *Id.* (internal quotations marks omitted); *see also* New York C.P.L.R. 206(a) ("[W]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete.")

      Likewise, under 28 U.S.C. § 2415(a), "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues...." 28 U.S.C. § 2415(a)  This limitations period governs an action by the government for money damages under a guaranty. *See, e.g., United States v. Culver*, 958 F.2d 39, 41 (4th Cir.1991). In either case, this action is plainly timely.

      g.      **Eighth Affirmative Defense: Defendants Do Not Owe What is Sought:**

      This is essentially a denial, but it is a curiously unexplained one, since the Guarantors cannot contest that OPIC loaned Borrower money, that they each unconditionally guaranteed

Borrower's obligations to OPIC, that Borrower defaulted, that OPIC demanded that the Guarantors honor their Guaranties and that (except as set forth above) Guarantors refused. A *prima facie* case for Guarantors' breach of contract is pleaded in this motion and unless the Guarantors can somehow find a material disputed fact that precludes summary judgment, a denial is no defense.

      **h.**    **Ninth Affirmative Defense: Defendants Have Not Breached a Valid Contract:** This "affirmative defense" is incomprehensible, and does not begin to try to explain why the Guaranties are not "valid contracts," but the Court may examine them on their face and determine that they are valid, enforceable and supported by consideration.

      **i.**    **Tenth Affirmative Defense; Contracts of Adhesion:** Nothing compelled the Guarantors to execute their Guaranties. They did so because they wanted OPIC to make a substantial loan to Borrower, which they own. Courts routinely bar equitable defenses such as this: *See HSH Nordbank*, 421 F. App'x at 72-73 (unconditional guaranty waived all legal or equitable defenses); *Citicorp Leasing*, 2005 WL 1847300, at *6-8 (holding that unconditional guarantees barred assertion of equitable defenses including estoppel); *Banco Do Estado De Sao Paulo, S.A. v. Mendes Junior Intern. Co.*, 249 A.D.2d 137, 138 (1st Dep't 1998) (duress defense precluded by clear waiver of defenses in loan documents).

      **j.**    **Eleventh and Twelfth Affirmative Defenses: No Damages/Failure to Mitigate:** OPIC alleges, and the Guarantors cannot dispute, that OPIC loaned Borrower money, the Guarantors guaranteed the Borrower's repayment, OPIC demanded repayment and both Borrower and Guarantors refused. OPIC has clearly been damaged. There is no defense to an unconditional guaranty grounded in an alleged failure to mitigate. *See Bell Atl. Tricon Leasing Corp. v. Pac. Contracting Corp.*, 703 F.Supp. 302, 303 (S.D.N.Y.1989), (where a guarantor provided an absolute guaranty, "[plaintiff] was not obligated to mitigate damages before recovering the balance due" from guarantor); *Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 208, 215 (1st Dep't 2007) (terms of the unconditional guaranty barred failure to mitigate defense).

      **k.**     **Thirteenth Affirmative Defense: OPIC Assumed the Risk of Loss:** Of course it didn't. Instead, it demanded guaranties and collateral. This "defense" may be rejected on its face.

      **l.**     **Fourteenth Affirmative Defense: OPIC's Unclean Hands:** As above, equitable defenses such as unclean hands cannot be raised in defense to an unconditional guaranty. The Court is respectfully referred to the discussion of the Tenth Affirmative Defense, which applies with equal force here.

      **m.**     **Fifteenth and Twenty-Second Affirmative Defenses: OPIC Prevented Guarantors from Performing and Intervening Cause:** These are "defenses" to which no real comment is needed.  OPIC had nothing to do with Guarantors' performance of their obligation to repay the Loan OPIC gave to the Borrower. Below, Guarantors say that other events, not OPIC's conduct, intervened to prevent their performance, to wit, the revocation of their Century 21 franchise.

      **n.**     **Sixteenth Affirmative Defense: Anticipatory Repudiation:** This is another inapplicable boilerplate defense. It is no defense to an unconditional guaranty for the reasons set forth above.

      **o.**     **Seventeenth Affirmative Defense: Implied Covenant of Good Faith:** The Guaranties themselves preclude this defense.  *See Hotel 71 Mezz Lender LLC v. Mitchell*, 63 A.D.3d 447, 448 (1st Dep't 2009)  ("[T]he guaranty contain[s] express waivers of any and all defenses to enforcement of the guaranty. The language of the waivers is sufficiently specific to bar Mitchell's asserted defenses of frustration of performance of Chicago H & S's obligations under the loan agreement by plaintiff, breach of the covenant of good faith and fair dealing, and fraudulent inducement"); *Red Tulip,* 44 A.D.3d at 208-10 (holding that waiver in guaranty barred defenses of bad faith and prevention of performance based on lender's alleged misconduct in connection with the underlying loan).

      **p.**     **Eighteenth Affirmative Defense: Estoppel:** Estoppel is another equitable defense that is barred when a defendant has executed an unconditional guaranty. The

Court is respectfully referred to the discussion of the Tenth Affirmative Defense. The same body of law applies here.

q.     **Nineteenth Affirmative Defense:  Failure of Consideration:** The Guarantors cannot genuinely dispute that they bargained for OPIC to loan Borrower, which they owned, up to $3,000,000.00, that OPIC did so and that Borrower ultimately borrowed more than $1,000,000 of this facility which neither Borrower nor Guarantors repaid. OPIC is merely seeking to enforce the agreement it struck with Guarantors. But even if a failure of consideration took place that would not be a defense to enforcement of a guaranty.  *See Harrison Court Assocs. v. 220 Westchester Ave. Assocs.,* 203 A.D.2d 244, 245 (2d Dep't 1994) (where the defendants gave an absolute and unconditional guarantee "the defendants are precluded from asserting the defense of lack of consideration with respect to the plaintiff's right to enforce the guarantee"); *Chemical Bank v. Sepler,* 60 N.Y.2d 289, 457 N.E.2d 714, 716 (1983) (unconditional guarantee waived defense of lack of further consideration).

r.     **Twentieth Affirmative Defense: Disposal of Collateral:** This "defense" is also incomprehensible, since OPIC's claims have nothing to do with collateral, other than the escrow account that OPIC seized as part of its Demand to Borrower and the excess proceeds generated when Guarantors sold one of the parcels of real estate they mortgaged to OPIC as part of the transaction, but in any event, no defense to enforcement of an unconditional guaranty exists arising out of the disposal of collateral. *See Citicorp,* 2005 WL 1847300, at *6 (defendant entered into absolute and unconditional guaranty which "waived any defense regarding Citicorp's failure to pursue or maximize....loan collateral"); *Corey v. Collins,* 10 A.D.3d 341, 343 (1st Dep't 2004) (holding that unconditional guarantor waived right to challenge effect of forfeiture of collateral on underlying debt).

s.     **Twenty-First Affirmative Defense: Frustration of Purpose:**  To the extent comprehensible, the Guarantors appear to be asking the Court to excuse them from their Guaranties because they lost their Century 21 franchise in a dispute with their franchisor. The risk of loss of a Borrower's sole asset, its franchise, is precisely the kind of event that would

cause a lender to require an unconditional guaranty.  Indeed, the Guaranties provide that they are absolute irrespective of "any change of circumstances, whether or not foreseeable and **whether or not any such change does or might vary the Obligations or the risk or obligations of the Guarantor hereunder…**"  Bequai Decl., Exhs. C and D at §2(a)(vii).  The fact that Guarantors, with the benefit of now-improved hindsight, could not have foreseen the risk that their business might fail is not the Court's problem.  In any event, changes in market conditions or economic hardship do not excuse performance. *See, e.g., Health-Chem. Corp. v. Baker*, 737 F.Supp. 770, 776 (S.D.N.Y. Feb. 26, 1990)("a change in market conditions or an increase in the cost of performance are insufficient grounds to assert these defenses [of excuse of non-payment pursuant to a contract]"); *DiScipio v. Sullivan*, 30 A.D.3d 660, 661 (3d Dep't 2006) ("[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship…. performance of a contract is not excused.").

t.      **Twenty-Third Affirmative Defense: Unjust Enrichment:**  This is another equitable defense to which no real defense is required.  OPIC seeks only the repayment of its loan from Guarantors, plus interest and agreed costs and fees.  There is nothing unjust about this. As with all other equitable defenses discussed above, the unconditional nature of the Guaranties bars the equitable defense of unjust enrichment.

u.      **Twenty-Fourth Affirmative Defense: Enforcement is Inequitable:**  As above, equitable defenses do not defeat an unconditional guaranty.  This defense, whatever it means, is barred by the Guaranties themselves.

v.      **Twenty-Fifth Affirmative Defense: Set-Off and Recoupment:**  On its face, this is not a defense. Rather, the Guarantors "merely reserve any and all rights of set-off and recoupment…" But while this is no defense, it bears mention that the guarantors have no rights of set-off and recoupment. *See Anglo Irish Bank Corp. Ltd. v. Ashkenazy*, 107 A.D.3d 602, 603 (1st Dep't 2013)("[t]he unconditional guaranty of payment signed by defendants waived any defense, reduction or set off…."). Moreover, the Guaranties state "[t]he Guarantor unconditionally waives… set-off …" Bequai Decl., Exhs. C and D at § 3(a).

17

## CONCLUSION

There is no dispute that a Loan was made by OPIC to Borrower, that the Loan is in default, that the Defendants unconditionally guaranteed repayment of the debt owed, that they waived their right to raise affirmative defenses and that neither they nor Borrower have repaid OPIC's Loan except to the small degree aforesaid. There is no genuine dispute of material fact requiring trial and this Court should grant summary judgment to OPIC on its claim and strike all affirmative defenses.

Accordingly, OPIC respectfully asks the Court to grant summary judgment in favor of OPIC in the aggregate sum of $1,161,856.03, plus interest at the statutory rate accruing after September 30, 2015, and the reasonable attorneys' fees and costs incurred in the prosecution of this action, and such other and further relief as to the Court seems just and proper.

Dated:   New York, New York
         March 30, 2016

Respectfully submitted,

Zukerman Gore Brandeis
  & Crossman, LLP

By: _____
    Ted Poretz
    Florence M. Beauboeuf
Eleven Times Square
New York, New York 10036
Tel.: (212) 223-6700
*Attorneys for Plaintiff Overseas
Private Investment Corp.*