```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
OVERSEAS PRIVATE INVESTMENT                                   :
CORPORATION,                                                  :
                                                              :
                           Plaintiff,                         :
                                                              :       15-cv-8171 (KBF)
              -v-                                             :
                                                              :       OPINION & ORDER
DAVID LEWIS MOYER and ANTONIO RAUL                            :
MARTINEZ,                                                     :
                                                              :
                           Defendants.                        :
                                                              :
------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 19, 2016

KATHERINE B. FORREST, District Judge:

In this action, a loan provider sues two loan guarantors following a default by the borrower of the underlying loan. The loan provider has moved for summary judgment. For the reasons stated below, the motion is GRANTED.

I.  FACTUAL BACKGROUND

Plaintiff Overseas Private Investment Corporation ("OPIC") is an agency of the United States government which provides funding for international investments by United States citizens through direct loans and loan guarantees. (Pl.'s 56.1 ¶ 1.) C21 Brasil Disenvolvimiento Ltda. ("C21 Brasil") is a limited liability company organized under Brazilian law. (Id. ¶ 2.) Defendants David Lewis Moyer and Antonio Raul Martinez each owned 47.5% of C21 Brasil, which they created as part of an effort to bring the Century 21 real estate brand to Brazil. (Id. ¶ 4; Def.'s 56.1 ¶ 1.) Defendants had the right to use the Century 21 brand pursuant to a 25-year sub-franchise agreement they entered into with Master South America LLC ("MSA"). (Def.'s 56.1 ¶ 1.)

In April 2009 C21 Brasil presented OPIC with a business proposal and loan request. (Id. ¶ 2.) C21 Brasil and OPIC entered into a loan agreement on December 11, 2009.[1] (Pl.'s 56.1 ¶ 2.) The loan was for up to a total principal amount of up to three million dollars. (Id.) The collateral for the loan included a pledge of C21 Brasil's quotas (shares), an assignment of C21 Brasil's sub-franchise agreement with MSA and valid second mortgages on seven properties in Hawaii. (Id. ¶ 14; Def.'s 56.1 ¶ 4-6.)

One of the conditions precedent to OPIC making any disbursement to C21 Brasil was the execution of "joint and several personal guaranties executed by Antonio Raul Martinez and David Lewis Moyer in favor of OPIC guaranteeing the payment of the Loan." (Pl.'s 56.1 ¶ 6.) On December 23, 2009, Martinez and Moyer each executed a guaranty in favor of OPIC.[2] (Id. ¶ 7.) These guaranties provided that each defendant

> hereby unconditionally and irrevocably guarantees, as primary obligor and not merely as a surety, the full and punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all the obligations of the Borrower now or hereafter existing under the Loan Documents, including … (i) all principal and accrued interest due and payable under the Loan Documents; (ii) all fees, costs, expenses and similar amounts payable under the Loan Documents; and (iii) the due performance and compliance by the Borrower with the terms and conditions of the Loan Documents.

(Id. ¶ 9.) The guaranties also made each defendant's obligations

> independent of the Obligations, and a separate action or action may be brought against each Guarantor to enforce this Guaranty, irrespective of whether any action is brought against the Borrower or whether the Borrower is joined in any such action or actions.

---

[1] A copy of the executed loan agreement is available at ECF No. 18, Exh. B.
[2] Copies of the executed guaranties are available at ECF No. 18, Exhs. C & D.

(Id. ¶ 10.)  OPIC's rights and the guarantors' obligations were made

> absolute, unconditional, irrevocable and continuing and shall not to any extent or in any way be reduced, limited, terminated, discharged, impaired, or otherwise affected (except as the same may be extinguished by the indefeasible payment and/or performance in full of the Obligations) irrespective of
>
> (i) any illegality, lack of validity, or enforceability of, or any misrepresentation, irregularity, or other defect in, any Loan Document or any other guaranty, agreement, or instrument relating thereto;
>
> (ii) any right, claim, defense, waiver, surrender, or compromise that such Guarantor may have or have made under or with respect to this Guaranty or otherwise;
>
> ….
>
> (vii) any change of circumstances, whether or not foreseeable and whether or not any such change does or might vary the Obligations or the risk or obligations of the Guarantor hereunder;
>
> (ix) the occurrence or continuation of any Default or Event of Default or any acceleration or required prepayment of the Obligations as a result thereof or otherwise
>
> (x) any failure by OPIC to take any steps to preserve its rights to any Lien or in any Security Document, or any failure by OPIC to perfect or keep perfected its Liens in any collateral;
>
> (xi) any law, regulation, decree, or judgment now or hereafter in effect that may in any manner affect the payment of any of the Obligations or any of OPIC's rights under the Loan Documents, whether or not the Borrower has a defense valid against OPIC and whether or not any other guarantor contributes to such payments;
>
> ….
>
> (xiii) any failure to pay Taxes that may have been payable in respect of the issuance or transfer of any Loan Document or to register the same with any governmental authority or to obtain any governmental order, license, or permit in connection with such issuance or transfer; or
>
> (xiv) any other circumstance that might otherwise constitute a defense available to, or a discharge of, the Borrower, the Guarantor, or any other guarantor or surety.

(Id.)  The guaranties also authorized OPIC to

> require payment by the Guarantor and enforce the obligations of the Guarantor hereunder without first being required to: (i) make any demand of, or make any effort of collection of any obligation of, or enforce OPIC's claims against, the Borrower, the Guarantor, or any other Person; (ii) resort to any security or other guaranty of the Loan or this Guaranty; or (iii) take any other action.

(Id.)  Each guarantor specifically and unconditionally waived, among other things,

> any requirement that OPIC protect, secure, perfect, or insure any Lien or any property subject thereto or exhaust any right or take any action against the Borrower or any other Person or any collateral.

(Id.)  Finally, the guaranties each specifically provided that they would be construed in accordance with, and governed by, New York state law, and that the guarantor consented to jurisdiction before this Court.  (Id.)

C21 Brasil ultimately borrowed $1,200,000 from OPIC in two separate disbursements.  (Id. ¶ 5.)  The first disbursement request, dated December 17, 2009 and signed by Moyer as C21 Brasil's Executive Vice President, was for $800,000.[3] (Def.'s 56.1 ¶ 11.)  The request directed that the disbursement be transferred in four parts: $37,500 to OPIC as a fee due on or prior to the first disbursement under the terms of the loan; $15,000 to a third-party firm "for payment of legal services;" $380,000 to MSA "for partial payment of sub-franchise fee;" and $367,500 to C21 Brasil itself.  (ECF No. 28, Exh. A.)  The request identified a Seattle bank as the account to be credited for MSA.  (Id.)

The $380,000 payment to MSA was necessary to secure MSA's consent to C21 Brasil's collateral assignment of the sub-franchise agreement to OPIC.  (Def.'s 56.1

---

[3] A signed copy of this disbursement request is available at ECF No. 28, Exh. A.

4

¶ 10.) MSA required that the transfer be made directly from OPIC's account in Washington, DC to MSA's bank in Seattle. (Id.) C21 Brasil registered its objection to making the transfer in that manner because, in its view, "such transfer was considered a criminal act by the government of Brazil." (Id.) Nevertheless, C21 Brasil included MSA's desired instruction in its disbursement request. (ECF No. 28, Exh. A.)

After the transfer, the Central Bank of Brazil froze C21 Brasil's account and began an investigation into tax evasion. (Def.'s 56.1 ¶ 12.) Defendants received no assistance from either OPIC or MSA in addressing the fallout, which halted C21 Brasil's operations for months and remained unresolved for years. (Id.)

On February 13, 2013, OPIC sent C21 Brasil a notice of default and acceleration based on C21 Brasil's failure to pay principal, interest, and fees and failure to comply with certain reporting requirements.[4] (Pl.'s 56.1 ¶ 13.) The notice informed C21 Brasil that OPIC was accelerating the full amount of the amount payable, which at the time totaled $1,118,132.26. (Id.) OPIC then seized an escrow account which contained a total of $130,668. (Id. ¶ 15.)

C21 Brasil did not pay the amount OPIC demanded. (Id. ¶ 16.) OPIC then made demands upon Moyer and Martinez as guarantors by letters dated May 15, 2013 and July 22, 2013, respectively.[5] (Id. ¶ 17.) The letters notified defendants that the outstanding amount of principal and interest stood at $1,003,234.35. (Id. ¶ 19.)

---

[4] A copy of the notice is available at ECF No. 18, Exh. E.
[5] Copies of the demand letters are available at ECF No. 18, Exhs. F & G.

5

Subsequently, one of the seven properties in Hawaii was sold, and OPIC received proceeds in the amount of $81,430.  (Id. ¶¶ 15-16.)

On October 16, 2015, OPIC filed this suit, seeking $1,161,856.03 and other costs and fees from Moyer and Martinez jointly and severally.  (ECF No. 1.)

II.     LEGAL PRINCIPLES

   A.     <u>Summary Judgment Standard</u>

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010).  The Court's function on summary judgment is to determine whether there exist any genuine issues of material fact to be tried, not to resolve any factual disputes.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986)

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  <u>Price v. Cushman & Wakefield, Inc.</u>, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment,"

6

because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson, 477 U.S. at 248; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

B.   Summary Judgment Before the Close of Discovery

Under Federal Rule of Civil Procedure 56(b), "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." However, where a party moves for summary judgment prior to the close of

discovery, the nonmovant is permitted to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994).

    C.    Breach of a Guaranty

Under New York law, "[a] guaranty is 'the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance.'" Terwilliger v. Terwilliger, 206 F.3d 240, 246 (2d Cir. 2000) (quoting 63 N.Y. Jur.2d Guaranty and Suretyship § 2 (1987)). "For a plaintiff to establish a prima facie case that it is entitled to recover on a guarantee under New York law, it must show: (1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant." Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994).

After a plaintiff has established its prima facie case, "it is 'incumbent upon the defendant to demonstrate, by admissible evidence, the existence of a triable issue of fact with respect to a bona fide defense.'" AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC, 890 F. Supp. 2d 373, 381 (S.D.N.Y. 2012) (quoting E.D.S. Sec. Sys., Inc. v. Allyn, 691 N.Y.S.2d 567, 567 (App. Div. 1999)).

"Where a guaranty states that it is 'absolute and unconditional,' guarantors are generally precluded from raising any affirmative defense." HSH Nordbank Ag New York Branch v. Swerdlow, 672 F. Supp. 2d 409, 418 (S.D.N.Y. 2009) (citing Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31, 35 (2d Cir. 1999)). "Under New York law, the only affirmative defenses that are not waived by an absolute and unconditional Guaranty are payment and lack of consideration for the Guaranty." CIT Group/Commercial Servs., Inc. v. Prisco, 640 F. Supp. 2d 401, 410 (S.D.N.Y. 2009) (citing Walcutt v. Clevite Corp., 191 N.E.2d 894, 897 (N.Y. 1963)).

III. DISCUSSION

    A. OPIC Has Established Its Entitlement To Recover Under the Guaranties

OPIC has submitted competent, admissible evidence of all of the necessary element of its prima facie case. There is uncontroverted evidence that OPIC loaned C21 Brasil $1,200,000. (Def.'s 56.1 ¶ 13.) There is uncontroverted evidence that both Moyer and Martinez personally guaranteed payment of that debt. (Pl.'s 56.1 ¶ 7.) And there is uncontroverted evidence that neither C21 Brasil nor the defendants paid the loan back when it came due after default. (Pl.'s 56.1 ¶¶ 11 & 18.) The evidence therefore establishes OPIC's prima facie entitlement to recover C21 Brasil's unpaid debt from Moyer and Martinez, jointly and severally. Accordingly, the burden shifts to defendants to assert a meritorious defense for which a genuine issue of material fact exists.

B.   <u>Defendants Have Waived Their Asserted Defenses</u>

Under New York law, absolute and unconditional guarantors generally cannot raise affirmative defenses to their obligations. "[U]nconditional guarantees are enforceable if written in 'clear and unambiguous' terms." <u>HSH Nordbank</u>, 672 F. Supp. 2d at 418 (citing <u>Otto Roth & Co. v. Gourmet Pasta, Inc.</u>, 715 N.Y.S.2d 78, 80 (App. Div. 2000)). Guarantors also cannot assert defenses expressly waived in the guaranty agreement itself.

The language of the guaranties at issue here precludes consideration of defendants' asserted affirmative defenses. The guaranties were made "absolute, unconditional, irrevocable and continuing." Moyer and Martinez disclaimed "any right, claim, defense, waiver, surrender, or compromise that such Guarantor may have." They agreed that their obligation would continue notwithstanding "any change of circumstances, whether or not foreseeable," "any law, regulation, decree, or judgment now or hereafter in effect that may in any manner affect the payment of any of the Obligations or any of OPIC's rights under the Loan Documents," or "any other circumstance that might otherwise constitute a defense available to, or a discharge of, the Borrower, the Guarantor, or any other guarantor or surety."

Waiver clauses this broad present "an insurmountable obstacle" against efforts to escape a guarantor's obligation. <u>Red Tulip, LLC v. Neiva</u>, 842 N.Y.S.2d 1, 5 (App. Div. 2007). "The rule reflects the notion that when parties 'have expressly allocated risks, the judiciary shall not intrude into their contractual relationship.'" <u>Citicorp Leasing, Inc. v. United Am. Funding, Inc.</u>, No. 03 Civ.1586 WHP, 2005 WL

1847300, at *4 (S.D.N.Y. Aug. 5, 2005) (quoting Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 735 (2d Cir. 1984)).

The Court notes that the case for enforcing the waiver in the personal guaranties is particularly strong in this case. As noted above, defendants claim that the format of the first disbursement created difficulties for their business. However, not only did Moyer sign the disbursement request which directed OPIC to deposit funds in MSA's account in Seattle, he did so on December 17, 2009. (ECF No. 28, Exh. A.) The two personal guaranties were not executed until December 23, 2009, days <u>after</u> the transaction in which defendants find fault. (ECF No. 18, Exhs. C & D.) This sequence of events provides even more reason to enforce the clear and unambiguous terms of the guaranties.

The only defenses potentially not waived by the comprehensive waiver claim in the guaranties are actual payment and lack of consideration. The latter defense is clearly inapplicable, as all parties agree that OPIC did disburse $1,200,000 at C21 Brasil's direction. The defense of actual payment is equally unavailing. Although Moyer and Martinez claim that "OPIC also perfected and retained collateral worth many more millions, including all of the investment and all of the earned equity of the owners in the business[, and also] held the Sub-Franchise Agreement," there is no allegation that OPIC has turned to any of these sources of collateral to recover its debt.[6] In addition, each guarantor waived his right to

---

[6] Defendants' opposition to OPIC's motion for summary judgment can also be read to obliquely allege that OPIC either began operating C21 Brasil itself or otherwise gained control over the rights to the Century 21 brand in Brazil pursuant to the collateral assignment of the sub-franchise agreement. However, the face of the collateral assignment demonstrates that it served only as security and "did not possess the characteristics of an assignment." In re I&M Acquisition Corp., No. 95 Civ. 2114 (SAS), 1995 WL 606353 at *5 (S.D.N.Y. Oct. 16, 1995). (ECF No. 28, Exh.

require OPIC to "exhaust any right or take any action against the Borrower or any other Person <u>or any collateral</u>." (Emphasis added.) Therefore, in the absence of any evidence or even allegation that OPIC has collected more than the two payments discussed above, OPIC's hypothetical alternative option of collecting some amount of recovery from the collateral set aside in the loan is immaterial to defendants' obligations as guarantors.

    C.    <u>Summary Judgment Is Not Premature</u>

Defendants additionally argue that OPIC's motion is premature at this stage, as the parties have not yet exchanged discovery. However, Martinez and Moyer have not submitted the required affidavit identifying the facts they seek, how they would be material to the legal questions to be decided, or any information about efforts to obtain such facts to date. "A reference to Rule 56([d]) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56([d]) affidavit, and the failure to file an affidavit under Rule 56([d]) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1137 (2d Cir. 1994) (internal citations omitted).

Given the broad and effective waiver of defenses discussed above and the absence of any suggestion that OPIC has collected any amounts in satisfaction of C21 Brasil's debts other than the escrow account and the proceeds from the sale of a

---

C.)  Moreover, the uncontroverted evidence in this case is that "OPIC never exercised any of its rights under the Collateral Assignment, including the right to operate Borrower's business or exercise any 'powers of ownership,' which at all times (until the Master Franchisor revoked Borrower's subfranchise) was operated by Borrower's management, to wit, Martinez and Moyer."  (ECF No. 28 ¶ 4.)

property in Hawaii, the Court cannot identify any area of discovery that would prove material to the issues to be decided in this motion. Thus, both because defendants failed to submit the necessary affidavit and because any such affidavit would be found wanting, summary judgment is appropriate at this stage. OPIC has carried its burden to demonstrate "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."

## IV.   CONCLUSION

For the reasons stated above, OPIC's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close the motion at Docket No. 17. Not later than **Wednesday, July 27, 2016**, the parties are directed to either jointly submit an agreed upon form of judgment to the Court or each submit their own proposed form of judgment to the Court.

SO ORDERED.

Dated:   New York, New York
         July 19, 2016

_____
       KATHERINE B. FORREST
       United States District Judge